UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In the matter:

Richard F. Eckerstorfer,                          Case No.: 13-26186

          Debtor.                                 Chapter 13

## DECISION

The debtor, Richard Eckerstorfer, through his chapter 13 plan seeks to satisfy a maintenance arrearage owed to his ex-wife, Sandra Kehrmeyer, by offsetting that debt with the payment of a tax debt for which the debtor and Ms. Kehrmeyer are jointly liable. Ms. Kehrmeyer has objected to confirmation of the debtor's proposed chapter 13 plan, and the debtor has objected to Ms. Kehrmeyer's proof of claim.

I

Ms. Kehrmeyer filed a petition for divorce against the debtor on March 15, 2010. The Dodge County Family Court granted her petition on April 13, 2012, and entered a judgment of divorce on January 16, 2013. The divorce judgment required the debtor and Ms. Kehrmeyer to file joint federal and state tax returns for 2011 and ordered that each party would be "equally responsible for the amount due" on those returns. CM-ECF No. 86-1, at 11. The parties filed joint tax returns as ordered; according to the debtor's proposed chapter 13 plan they owed the IRS, the Wisconsin Department of Revenue, and the Arkansas Secretary of State a total of $15,207.78 as of the date on which the debtor filed his bankruptcy petition—an amount for which both parties concede they are jointly liable. See CM-ECF No. 79, at 8 & CM-ECF No. 86, at 3.

The debtor filed this bankruptcy case on May 6, 2013. Ms. Kehrmeyer filed proof of claim #7 on September 26, 2013, which she amended on December 17, 2013. Her amended proof of claim indicates that part of her claim against the debtor is an unsecured, priority claim in the amount of $10,266.27, of which $5,431.16 is attributed to maintenance arrears.

The debtor amended his proposed chapter 13 plan for a second time on December 13, 2013, to provide that it will satisfy the maintenance arrears owed to Ms. Kehrmeyer by paying $5,169 of the joint tax debt. Specifically, the proposed plan provides:

> The total taxes owed to the IRS, WI Dept. of Revenue, and Arkansas Secretary of State are $15,207.78 as of the petition date, meaning that the Debtor and Sandra Kehrmeyer are each responsible for payment of [one-half], or $7,603.89. . . . The Debtor owes a pre-petition arrearage of $4,527.00 to Ms. Kehrmeyer. Of this amount, $1,942.50 shall be immediately deemed offset by the pre-petition tax intercept that was paid on Ms. Kehrmeyer's account. Of the remaining $2,584.50, instead of paying this amount to Ms. Kehrmeyer directly, the trustee will pay this amount toward the tax obligations[.] . . . The maintenance arrearage shall be deemed satisfied in full upon payment [of $5,169.00] to the taxing authorities[.]

CM-ECF No. 79, at 8.

On January 6, 2014, Ms. Kehrmeyer renewed her previous objections to confirmation of the debtor's proposed amended chapter 13 plan. She objects to confirmation, in part, on the basis that the debtor's plan will not "pay priority maintenance obligations in full, in deferred cash payments, . . . and . . . attempts to offset a first tier priority claim with a lower tier priority claim . . . ."[1] CM-ECF No. 85, at 1.

On October 21, 2013, the debtor filed an objection to Ms. Kehrmeyer's proof of claim. He objects, in part, on the basis that the maintenance arrears will be set off through his chapter 13 plan, and therefore requests that the trustee not pay that portion of the claim.[2] CM-ECF No. 53, at 2.

At a December 18, 2013 hearing on both objections, I directed the parties to brief the issue of whether the debtor's proposed chapter 13 plan properly provides for the payment of the maintenance arrears owed to Ms. Kehrmeyer. In a brief filed on

---

[1] Ms. Kehrmeyer objected to confirmation on six other grounds. If necessary, those issues will be considered at a later evidentiary hearing.

[2] The debtor has also objected to the amount of maintenance arrears claimed by Ms. Kehrmeyer on non-setoff grounds. This objection will also be considered at a later evidentiary hearing.

December 30, 2013, the debtor argues that his proposed treatment of the maintenance arrears owed to Ms. Kehrmeyer should be allowed either as (i) "a method of paying the maintenance claim over time through deferred cash payments to the taxing authorities," or (ii) an offset of the maintenance arrears owed to Ms. Kehrmeyer, disallowing the amount she claims for maintenance arrears in the amount the debtor's chapter 13 plan pays to the taxing authorities. CM-ECF No. 84, at 3.

This is a core proceeding under 28 U.S.C. §157(b)(2)(B) and (L). Following a review of the parties' briefs, uncontested facts relating to the parties' obligations, and the record before me, I conclude that the payment of the maintenance arrears owed to Ms. Kehrmeyer proposed in the debtor's chapter 13 plan does not comply with 11 U.S.C. §1322(a)(2) and that the debtor has not demonstrated that the joint tax debt is subject to setoff. Consequently, I sustain Ms. Kehrmeyer's objection to confirmation of the debtor's proposed chapter 13 plan as it relates to the plan's payment of the maintenance arrears owed to her, and I overrule the debtor's claim objection filed on October 21, 2013.

## II

### A

Section 1322(a)(2) of title 11 of the United States Code requires a chapter 13 plan to "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 [of title 11], unless the holder of a [priority] claim agrees to a different treatment of [her] claim". 11 U.S.C. §1322(a)(2). Among the claims §507 entitles to priority are "[a]llowed unsecured claims for domestic support obligations that . . . are owed to or recoverable by" a former spouse as of the date that a bankruptcy petition is filed. 11 U.S.C. §507(a)(1)(A). As a result, a chapter 13 plan that does not provide for the full payment of an allowed unsecured claim for domestic support obligations to the holder of the claim in deferred cash payments made after the effective date of the plan "cannot be confirmed without the claim holder's consent." *Matter of Escobedo*, 28 F.3d 34, 35 (7th Cir. 1994); see also *In re Parker*, 15 B.R. 980, 982 (Bankr. E.D. Tenn. 1981) (stating that "deferred" means that the payments "can be paid after the effective date of the plan and in more than one payment").

3

There is no dispute that Ms. Kehrmeyer's claim for maintenance arrears is a domestic support obligation entitled to priority under §507(a)(1)(A). The debtor also does not contest that §1322(a)(2) applies to that claim to the extent it is allowed.

The debtor instead argues that his proposed chapter 13 plan complies with §1322(a)(2) even though it pays the jointly owed tax liability while paying nothing to Ms. Kehrmeyer. To support his position the debtor argues that "it doesn't matter how the claims are paid through the plan, as long as they are paid . . . ." CM-ECF No. 84, at 2 (emphasis omitted). The debtor further argues that his plan complies with §1322(a)(2)'s cash payment requirement because the plan provides for the full payment of the maintenance arrears owed to Ms. Kehrmeyer by directing the trustee to make cash payments to the IRS, the Wisconsin Department of Revenue, and the Arkansas Secretary of State to pay tax claims for which Ms. Kehrmeyer is jointly liable. Without citing to any authority, the debtor contends that §1322(a)(2) allows him to satisfy one priority claim—Ms. Kehrmeyer's maintenance claim—by making deferred cash payments to the holders of different priority claims—the taxing authorities—because Ms. Kehrmeyer and the debtor are jointly liable on the tax claims.

This proposal can't be reconciled with the text of §1322(a)(2): The debtor's plan does not propose to make any "cash payments" to Ms. Kehrmeyer. Section 1322(a)(2) requires that the debtor's chapter 13 plan provide for the payment of Ms. Kehrmeyer's (and all other) priority claims in deferred cash payments. A direction to make payments to taxing authorities is a direction to make cash payments to pay *their* priority claims rather than a direction to make cash payments to pay *Ms. Kehrmeyer's* priority claim. "[P]ayment, in deferred cash payments," must be understood to require the delivery of money to each priority claimholder in order to discharge each priority claimholder's claim against the debtor. See 11 U.S.C. §101(5)(A) ("'claim'" is a "right to payment"); see also BLACK'S LAW DICTIONARY 1243 (9th ed. 2009) (defining "payment" as the "[p]erformance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation"); *id.* at 245 (defining "cash" as "[m]oney or its equivalent"). The principal benefit of receiving "cash" is that the recipient can use the cash as she sees fit. The proposal to "pay" Ms. Kehrmeyer by satisfying a debt jointly owed to various taxing authorities deprives her of this benefit. It is not, therefore, a proposal to make "payment, in deferred cash payments," as required by §1322(a)(2).

4

What is more, the trustee's payment of cash to the taxing authorities will not discharge the debtor's obligation to Ms. Kehrmeyer. At best the debtor's payment of more than fifty percent of the joint tax liability will give rise to a contribution claim against Ms. Kehrmeyer. This contribution claim has yet to arise because, as far as the record reflects, the debtor has not paid more than one-half of the joint tax obligation. The debtor, presuming that Ms. Kehrmeyer will make no payments on the jointly owed tax obligation, argues that the court should confirm a chapter 13 plan that gives him advance credit for paying the tax claim in order to avoid later having to pursue a contribution claim against Ms. Kehrmeyer. But, again, the setting off of a mutual debt is not a "full payment[] in deferred cash payments," and Ms. Kehrmeyer has not consented to this treatment of her maintenance arrears claim. §1322(a)(2). If the debtor has a valid setoff right against a creditor, that right is a matter to be exercised through either the claims allowance process or an adversary proceeding.[3] Consequently, the debtor's proposed chapter 13 plan does not provide for deferred cash payments to accomplish full payment of the maintenance arrears owed to Ms. Kehrmeyer as required by §1322(a)(2).

B

The debtor also argues that Ms. Kehrmeyer's maintenance arrears claim "should be disallowed to the extent the Debtor is entitled to an offset . . . for the portion of her tax liability that he is paying." CM-ECF No. 84, at 3. The debtor's ability to accomplish this depends on whether Wisconsin law affords the debtor a right to set off his

---

[3] Whether the debtor must raise a setoff right through an adversary proceeding rather than a claim objection appears to be an open question. Compare *Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus.)*, 183 B.R. 812, 819–20 (Bankr. N.D. Ill. 1995) ("Set-off can also serve as a proper basis for an objection and a proper ground for disallowance of a claim."), with *In re UTEX Commc'ns Corp.*, 457 B.R. 549, 567 (Bankr. W.D. Tex. 2011) ("An objection to claim is the improper outlet for raising a claim of set off."); see also Fed. R. Bankr. P. 7001(1); Fed. R. Bankr. P. 3007(b). Ms. Kehrmeyer has not contested on procedural grounds the debtor's decision to raise setoff as a claim objection, and the possible procedural defect does not affect this court's ability to decide the debtor's claim objection on its merits. See Fed. R. Bankr. P. 9005; *Tully Constr. Co. v. Cannonsburg Envtl. Assocs. (In re Cannonsburg Envtl. Assocs.)*, 72 F.3d 1260, 1264–65 (6th Cir. 1996) (holding that a failure to file an adversary proceeding will not defeat a bankruptcy order when the error does not result in any prejudice to the responding party); cf. *Vill. Mobile Homes, Inc. v. First Gibraltar Bank (Matter of Vill. Mobile Homes, Inc.)*, 947 F.2d 1282, 1283 (5th Cir. 1991) (explaining that compliance with Rule 7001 "may be excused by waiver of the parties"). And despite the uncertain procedural posture, the debtor objects to Ms. Kehrmeyer's claim on one of the grounds provided for in §502(b). See 11 U.S.C. §502(b)(1).

Case 13-26186-gmh    Doc 89    Filed 03/25/14    Page 5 of 9

maintenance obligation to Ms. Kehrmeyer "as of the date of the filing of the petition".
11 U.S.C. §502(b).

To begin with, it is unclear whether Wisconsin law would allow an individual to
offset a maintenance arrearage obligation with a contribution claim owed to him by his
former spouse.[4] But that issue need not be resolved here. The debtor's setoff objection
fails because, as of the date he filed his bankruptcy petition, no contribution right had
arisen against Ms. Kehrmeyer; thus, the necessary mutuality of obligations is lacking.

The right of setoff under Wisconsin law was originally a creation of statute,
*Fuhrmann v. Seybold (In re Seybold's Estate)*, 270 N.W. 87, 89 (Wis. 1936), but the
Wisconsin Supreme Court has long recognized a right to equitable setoff, see *Jones v.
Piening*, 55 N.W. 413, 415 (Wis. 1893); *Piotrowski v. Czerwinski*, 120 N.W. 268, 269 (Wis.
1909); *Nat'l Warehouse Corp. v. Banking Comm'n (In re Milwaukee Commercial Bank)*,
294 N.W. 538, 540 (Wis. 1940). Equitable setoff is proper only where "mutual demands
exist, where insolvency has intervened even though one of the demands has not yet
matured, and where no equities of other claimants are shown to exist." *Nat'l Warehouse
Corp.*, 294 N.W. at 540.

Setoff, therefore, requires that the claimant and the debtor have mutual debts. *Id.*;
*Mattek v. Hoffmann*, 76 N.W.2d 300, 302 (Wis. 1956); see also *Seligmann v. Heller Bros.
Clothing Co.*, 34 N.W. 232, 233 (Wis. 1887). And, as the Wisconsin Supreme Court has
explained, "Mutual debts . . . [are] those which are due and payable, on each of which
the cause of action has accrued and exists at the same time, [but] are mutual credits if

---

[4] The Wisconsin Supreme Court had recognized the right to set off domestic support arrearages under
special circumstances, none of which includes the right to set off a maintenance arrearage by the payment
of a joint tax liability. See, e.g., *Foregger v. Foregger*, 162 N.W.2d 553 (Wis. 1968); *Anderson v. Anderson*,
261 N.W.2d 817 (Wis. 1978); see generally *Schulz v. Ystad*, 456 N.W.2d 312 (Wis. 1990). And, in 1993, the
Wisconsin legislature amended Wis. Stat. §767.32—renumbered to §767.59 in 2007—to prohibit courts
from altering the amount of outstanding maintenance arrearages "except to correct previous errors in
calculations." Wis. Stat. §767.59(1m). Although the Wisconsin Supreme Court has not directly addressed
the issue of whether setoff is a revision of a maintenance arrearage foreclosed by §767.59(1m), the
statute's language and Wisconsin's long-standing policy to require strict compliance with maintenance
orders suggest that the debtor's proposed setoff might be held to be an impermissible retroactive
modification of the amount of maintenance arrears owed to Ms. Kehrmeyer. But see *Hansen v. Hansen*,
500 N.W.2d 357, 361–62 (Wis. Ct. App. 1993) (noting that §767.32(1m) "may not be used to demonstrate a
legislative intent that all actions by the court affecting maintenance are prospective dating from when the
payee receives notice"); *Ladwig v. Ladwig*, 785 N.W.2d 664, 675–77 (Wis. Ct. App. 2010) (allowing other
payments benefiting ex-spouse to be accounted for in maintenance award or property division).

6

either remains to be paid at a future day." *Mattek*, 76 N.W.2d at 302. Mutuality of debts exists when the debts are "held by the same parties in the same capacity (that is, as obligor and obligee) . . . ." *Meyer Med. Physicians Grp, Ltd. v. Health Care Serv. Corp.*, 385 F.3d 1039, 1041 (7th Cir. 2004) (applying 11 U.S.C. §553(a)); see also *Studley v. Boylston Nat'l Bank of Boston*, 229 U.S. 523, 528 (1913) (doctrine of setoff "is grounded on the absurdity of making A pay B when B owes A").

The obligations the debtor seeks to set off lack mutuality. While the debtor owes Ms. Kehrmeyer, Ms. Kehrmeyer does not owe the debtor. The divorce judgment states that each party would be "equally responsible for the amount due" to the IRS, the State of Wisconsin, and the State of Arkansas. Any debt that Ms. Kehrmeyer owes the debtor is a speculative future one that has yet to arise: The debtor cannot have a contribution claim against Ms. Kehrmeyer until he pays more than one-half of the mutually owed tax liability. See *Wagner v. Daye*, 227 N.W.2d 688, 689 (Wis. 1975) ("The right to contribution is founded on the equitable principle that one should not pay more than his fair share of the joint liability. . . . Logically, there should be no action for contribution until one party has in fact paid more than his share of the judgment." (internal citations omitted)); see also *Kafka v. Pope*, 533 N.W.2d 491, 494 (Wis. 1995) (explaining that a contribution claim depends on "whether one person jointly liable paid more than his fair share for a common obligation").

The debtor hasn't presented any evidence of the original amount owed to the taxing authorities; thus he has not shown that he paid more than one-half of that amount before he filed his bankruptcy petition. The debtor asserts in his proposed chapter 13 plan that both parties remain jointly responsible to pay $15,207.78 — and presumably owed that amount on the petition date. And, according to the debtor, he had only paid $3,885 towards the total joint tax obligation pre-petition — again, presumably that's the only payment he made pre-petition.

Thus, the debtor has not shown that he had a pre-petition contribution claim that could serve as a basis to set off Ms. Kehrmeyer's maintenance claim. Presuming that the total pre-petition tax liability was $19,092.78 (the $15,207.78 remaining on the petition date plus the $3,885 the debtor paid pre-petition), no contribution claim would have arisen because $3,885 (the amount the debtor paid) is far less than $9,546.39 (one-half of the $19,092.78 total obligation). While it is not clear that these amounts are correct, the debtor has neither alleged nor submitted evidence that he paid more than one-half the parties' joint tax obligation before he commenced this chapter 13 proceeding.

7

As a result, the debtor has not shown that he and Ms. Kehrmeyer hold debts in the "same capacity." As far as the record reflects, the debtor is obligated to Ms. Kehrmeyer on her maintenance claim, but Ms. Kehrmeyer is obligated to the IRS, the State of Wisconsin, and the State of Arkansas on the tax claims. And, again, the debtor's expected contribution claim against Ms. Kehrmeyer does not justify any setoff because §502(b) requires a court to determine "the amount of [a creditor's] claim . . . as of the date of the filing of the petition". 11 U.S.C. §502(b). As of that date, as far as the record shows, the debtor had no contribution claim against Ms. Kehrmeyer.

The debtor also argues that equity requires the court to allow his proposed setoff because Ms. Kehrmeyer "is attempting to obtain payment on the maintenance arrearage, not pay the taxes, and leave the Debtor holding the bill for the full amount." CM-ECF No. 84, at 2. While recognizing that he would then have a separate cause of action against Ms. Kehrmeyer, he contends that it "would be difficult to collect" on that cause of action. *Id.* Even putting aside that (i) the amount of Ms. Kehrmeyer's allowed claim must be determined as of the date the debtor filed his bankruptcy petition and (ii) the debtor cites no authority for this wide-sweeping "equitable" setoff right, the debtor has presented no evidence to support his allegation that Ms. Kehrmeyer will shirk her responsibility to pay her half of the tax debt.

The predicament in which the debtor finds himself would be no different outside of bankruptcy. The debtor would not be able to today set off his maintenance arrears in a Wisconsin state court on the theory that he may sometime in the future pay more than one-half of the joint tax liability. And the fact that the debtor has filed for bankruptcy does not enlarge his state-law rights in this regard: The Code neither creates a separate setoff right nor expands any state-law setoff right. See *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18–19 (1995); 11 U.S.C. §553.

For these reasons, the amount of maintenance arrears owed to Ms. Kehrmeyer cannot be reduced based on the debtor's possible future payment of the parties' joint tax debt.

Accordingly, I conclude that the debtor's proposed chapter 13 plan does not comply with 11 U.S.C. §1322(a)(2), and the debtor has not demonstrated that he is entitled to set off the amount he owes Ms. Kehrmeyer in maintenance arrears based on payments he made pre-petition to pay their joint tax liability.

A separate order will be entered consistent with this decision.

March 25, 2014

_____

G. Michael Halfenger, U.S. Bankruptcy Judge